UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| AVONDA URBEN, on behalf of herself and in her capacity as the Sellers' Representative,<br><br>Plaintiff,<br><br>v.<br><br>GRIDKOR, LLC, MICHAEL BRYANT, and ALYSSA SCHRECENGOST BRYANT,<br><br>Defendants. | )<br>)<br>) Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Avonda Urben, on behalf of herself and in her capacity as the Sellers' Representative for all holders of all the outstanding stock (the "Sellers") of The Perfect V Enterprises, Inc. ("PVE" or the "Company") by and through her undersigned attorneys, hereby alleges against all Defendants as follows.

## PRELIMINARY STATEMENT

1.      This is an action for breach of contract arising out of the sale of a business. The buyer, GridKor, LLC ("GridKor" or the "Buyer") and Avonda Urben as the Sellers' Representative entered into the November 8, 2022 Share Purchase Agreement ("SPA") for the purchase and sale all the outstanding stock of PVE, a luxury intimate skincare brand.  The purchase price was $1 upon closing with a commitment to pay the Sellers' Representative a royalty of $3.25 per unit sold until reaching the aggregate maximum royalty of $3.5 million. The consideration for allowing the Buyer to finance the sale transaction in this manner, among other things, was a series of requirements that GridKor not wind down or otherwise substantially change or reduce the

business, and use its best efforts in a variety of ways to maximize sales in order to pay the royalties as contemplated.

2.   Shortly after consummation of the transaction, the Buyer has not only failed to make any monthly royalty payments, but it has violated multiple provisions of the agreement by shutting down manufacturing, warehousing and marketing – even withdrawing, in cash, all the Company's available funds and closing the bank accounts. No new bank accounts have been opened and no capital of any kind has been injected into the business. No sales are being made; no orders fulfilled.  The damage to the brand in two months is fatal and the Company is unlikely to recover.

3.   The Buyer is in material breach of at least half a dozen sections of the SPA and the remedy is clearly set forth therein: acceleration of the $3.5 million maximum aggregate royalty to be due and payable immediately.

4.   The Sellers are entitled to the immediate payment of the maximum royalty, payment of the total amount of outstanding debt for which the Buyer agreed to be responsible, and all other damages suffered by the material breaches of the SPA, together with interest.

## PARTIES

5.   Plaintiff Avonda Urben is an individual residing at 41231 Chatham Green Circle, Aldie, Virginia, 20105.

6.   Upon information and belief, Defendant GridKor, LLC ("GridKor") is a limited liability company organized under the laws of the State of Wyoming with a mailing address of 30 N. Gould Street, Ste. R, Sheridan, Wyoming, 82801. Upon information and belief, its members include GridSwitch Asset Management Services, LLC and KorDev, LLC, Michael Bryant and Alyssa Bryant.

7. Defendant Michael Bryant ("Bryant") is an individual with an address in Pennsylvania. Bryant is the President of GridKor and has the legal authority to act on its behalf.

8. Defendant Alyssa Schrecengost Bryant ("Alyssa") is an individual also with a Pennsylvania address. Upon information and belief, Alyssa is a member and owner of GridKor.

9. Upon information and belief, Bryant and Alyssa are alter egos of GridKor.

10. Upon information and belief, Bryant, Alyssa, and GridKor share a unity of interest and ownership such that the separate personalities of the corporation and the individuals no longer exist. Bryant and Alyssa held themselves out to bank representatives as owners of the Company through GridKor, and rather than transfer the Company's funds into new business accounts, withdrew the Company's funds in $100 bills and, upon information and belief, siphoned the business funds for personal purposes, and/or Bryant and Alyssa have commingled personal and corporate funds.

11. Upon information and belief, GridKor has failed to observe corporate formalities.

## NOTABLE NON-PARTIES

12. Upon information and belief, KorDev, LLC ("KorDev") is a limited liability company formed under the laws of Wyoming with a principal place of business located at 2408 James Street, Aliquippa, Pennsylvania 15001.

13. Upon information and belief, GridSwitch Asset Management Services, LLC ("GridSwitch") is a limited liability company formed under the laws of Delaware and upon information and belief is a member of GridKor. GridSwitch has a business address of 311 Rouser Road, 3rd Floor, Moon Township, Pennsylvania 15108.

**JURISDICTION**

14. The Court has jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000 and the parties are citizens of different states.

**VENUE**

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to these claims occurred, and the business that is the subject of the breached SPA has a principal place of business in, this judicial district.

**FACTS COMMON TO ALL COUNTS**

    A.    **Avonda Urben Founds and Grows the Perfect V Enterprises, Inc.**

16. Avonda Urben has spent her career as a senior marketing executive for several beauty and fashion companies, including Revlon, Renaissance, L'Oreal Paris and Iconix, and as a marketing consultant creating new products for beauty brands.

17. Urben launched The Perfect V, the first luxury line of skincare for the V (the delicate skin of the bikini area), in Europe and Hong Kong when she was living in Copenhagen. The brand concept is based on the natural confidence with their bodies that Scandinavian women are known for.

18. "The Perfect V" brand, founded and developed solely by Urben, is credited as the first of its kind and for establishing an entirely new category of luxury intimate skin care. The Perfect V quickly gained popularity and strong brand awareness in the United States. The suite of products and services are marketed and sold throughout a network of wellness and luxury spas, salons, and beauty e-tailers, including internationally recognized traditional retailers such as Anthropologie, Blue Mercury, and Revolve.

19. PVE was incorporated in the State of Delaware on November 12, 2014.

### B. PVE and GridKor Negotiate the Transaction

20. PVE successfully generated in excess of $200,000 in sales annually for years under Urben's control and management. The Company, however, needed an infusion of working capital in order to meet the needs for growth. Urben devoted time and energy to finding new investors. In light of tight capital market conditions following the pandemic and the subsequent economic environment, PVE was open to and explored a variety of growth opportunities.

21. Urben met Bryant through a business colleague in August 2022. At the time, Bryant was the principal of KorDev, a company that described itself as a digital marketing and brand building company. Bryant represented that he, operating through KorDev, had the financial ability to increase production and manufacturing of product and to increase effective marketing of the brand. Importantly, Bryant insisted that he had both the available capital and the requisite experience and skills to grow the Company.

22. On September 22, 2022, for example, Bryant's team sent to Urben a "Perfect V Brand Plan" outlining what KorDev was prepared and able to do in a partnership with PVE. Bryant touted that his "digital marketing department specializes in taking a brand, at any point in its lifespan, and growing it to a point of steady cash flow and beyond. We utilize social media, SEO, and other internet-based routes to help achieve this." The marketing plan provided the specifics of how he and his team would leverage digital marketing, influencers, and all popular platforms of social media to dramatically increase sales and revenues for the brand.

23. Later, Bryant affirmed his financial commitment to grow the Company when he wrote to all of PVE's then sales partners, customers, and accounts claiming that "A catalyst of this

acquisition was our ability to tackle [supply issues] and ensure to all of our ecommerce and retail partners that we can meet the necessary supply needs in order to keep a consistent flow of sales."

24. In August 2022, as the parties explored a strategic partnership, Urben sent Bryant an investor deck, brand book, inventory worksheets, debt information, sales information, and the Company's P&L statements, together with other basic PVE information. Urben made clear that she had built a strong brand that was in need of capital to meet the market's considerable demand in order to grow.

25. Bryant insisted, and Urben ultimately agreed, that the transaction be structured as a sale of the Company financed by future sales.

26. Bryant introduced GridKor as a new entity to be the purchaser. GridKor purports to be a collaborative partnership between GridSwitch Asset Management Services, LLC (an energy asset management company) and KorDev. GridKor describes itself as "a global leading mergers and acquisition company aiming to build an ever-expanding portfolio of business, real estate and other cash flowing-assets."[1] GridKor claims to have "over $100 million already acquired throughout 2022" and further claims to be acquiring three (3) businesses per month. However, GridKor appears to have been formed in September 2022.

27. GridKor proposed the first draft contract for sale on or about September 15, 2022, pursuant to which GridKor would purchase all outstanding shares of PVE for $1 plus an ongoing royalty of $3.25 per unit sold until aggregate royalties amounted to $3.5 million. The parties negotiated the final terms of the transaction, though the basic structure and economic terms remained the same as GridKor's initial proposal.

---

[1] https://www.gridkor.com/about   Last visited, January 29, 2023.

6

### C. The Shares Purchase Agreement

28. The transaction was signed and closed simultaneously on November 8, 2022. A true and correct copy of the fully executed November 8, 2022 Stock (Shares) Purchase Agreement by and between GridKor, LLC and Avonda Urben on behalf of herself and behalf of all Shareholders (i.e., the SPA) is attached hereto as Exhibit A.

29. The simple structure of the SPA provided that GridKor would purchase all of the outstanding shares of PVE for $1.00. *SPA §II, §III.* Thereafter, GridKor would pay the Sellers' Representative a $3.25 royalty per unit sold up to a Maximum Aggregate Royalty of $3,500,00. *SPA §XIII(e).*

30. GridKor, as Buyer, waived all due diligence and execution of the SPA and closing occurred simultaneously. *SPA §§IV, VI*

31. In addition to paying royalties up to the full $3.5 million, GridKor also agreed in the SPA to assume responsibility for two SBA loans (the "SBA Loans") in principal amounts of $8,500 and $51,200, respectively, plus accrued interest. GridKor agreed that in the event the Seller was unable to transfer the SBA Loans to the Company, then the Buyer will timely make all necessary payments to keep the Seller in good standing and "fulfill the outstanding obligations under the SBA Loans and indemnify and hold harmless the Seller from any liability thereunder." *SPA §XIII(j).*

32. The SPA contained various provisions requiring the Buyer to protect the Company and to use reasonable best efforts to maintain and grow the Company's revenues. Put another way, the consideration for permitting GridKor to finance the purchase out of future royalties to be paid to the Sellers' Representative was that the Buyer must in fact operate and grow the Company and

7

do nothing to jeopardize the Company's ability to generate sufficient sales from which to pay royalties up to the aggregate amount of $3.5 million as agreed.

33. For example, GridKor undertook not to change the Company's business model or to reduce the size or scope of the business. *See SPA §XIII(g)*. GridKor also undertook specific marketing obligations with specific action items. *See SPA §XIII(i)*. Failure to meet these obligations results in acceleration of the total $3.5 million royalty to become immediately due and payable. *Id.* GridKor also made specific promises with respect to the protection, maintenance and enforcement of the Company's significant intellectual property assets and promised to exploit those assets for the benefit of the Company, specifically increasing the Company's sales. *See SPA §XIII(f)*. GridKor agreed to provide monthly royalty payments and reports to the Seller and also provide the Seller with full access to all sales and other financial information upon written request. *See SPA §XIII(h)*.

    **D.**   **GridKor's Breaches of the SPA**

***GridKor's Conduct to Halt the Business***

34. Within just weeks of the Closing, GridKor began a course of bizarre and unprofessional conduct that constitutes multiple breaches of the SPA.

35. On or about December 8, 2022, GridKor had withdrawn all funds (in cash) from the Company's bank accounts and closed the accounts. Upon information and belief, GridKor has not opened new accounts, replaced the withdrawn funds, or injected any new capital in the business.

36. On or about December 8, 2022, Bryant and Alyssa personally withdrew all PVE's funds in cash that they took with them. Urben accompanied Bryant and Alyssa to TD Bank and Chase Bank, where Bryant and Alyssa withdrew approximately $10,000 – in $100 bills – from

PVE's two bank accounts. Bryant informed the bank representative at TD Bank that Alyssa is the owner of the Company and as such should be the one to withdraw the funds and close the account.

37. Around the same time, GridKor also informed PVE's then sales partners, customers and suppliers that it would be halting all sales channels and not shipping any product. In fact, GridKor has canceled or simply failed to fulfill approximately 50 existing orders for product.

38. GridKor has failed to pay any monthly bills owed to the Company's two warehouses (one in the U.S. and one in the U.K.) at any time since the Closing and has thereby effectively shut down all possibility for shipment of product. Though GridKor has made statements that it intended to move operations to a consolidated warehouse/manufacturer in Florida, upon information and belief it has not done so and has made no other efforts to manufacture inventory or continue fulfilling orders for sales.

39. Upon information and belief, GridKor has failed to make timely payments of the Company's insurance premiums resulting in the cancellation of the Company's policy.

***GridKor's Violations Result in the Acceleration of the Maximum Royalty***

40. By failing to pay any bills, closing all banking accounts of the Company and terminating all relationships with manufacturers and/or warehouses, and making zero sales, GridKor is in breach of Section XIII(g) which provides that if "… (i) the Business Entity … ceases to carry out its activities (or a substantial part thereof) in circumstances where Buyer has not used its reasonable best efforts to sell Units and pay out the full Royalty to the Sellers [or] …(iii) the Business Entity otherwise materially changes its business model and/or scope of business" then "the remaining amount less than $3,500,000 that has not been paid to the Sellers shall be accelerated and due in full by the Buyer to the Sellers."

41. GridKor has violated the SPA by failing to use its "reasonable best efforts to effectively market and promote the inventory and Units of the Company in the form of social media advertising, cost-per-acquisition sales, a consistent, flowing content stream to strengthen general marketing …[which] will include … 3-5 social media uploads per week." In addition to failing to meet the more general requirements or move inventory into spas and stores as required (as described above), even prior to shutting down all sales by December 9, 2022, there had been a total of only 8 social media posts in 4 weeks of ownership – which included the very busy Black Friday and Pre-Christmas sales periods. No other social media was used or other original posts created as required by, and promised in, the GridKor Perfect V Marketing Statement. "Buyer's failure to adequately perform its responsibilities under this section shall result in an acceleration in full of the maximum Royalty payment of $3,500,000 …". *SPA §XIII(i)*. Accordingly, acceleration of the $3.5 million royalty has been triggered pursuant to this provision as well and is immediately due and payable.

***GridKor's Additional Material Breaches of the SPA***

42. What is more, GridKor is in breach of the SPA by failing to pay *any* royalties or provide *any* royalty reports. Section XIII(e) of the SPA provides that "the Buyer shall pay a royalty of $3.25 per unit sold …. Any such Royalty shall be paid by the Buyer on the 15th day of each month immediately following the month in which such Royalty was earned…. With each such monthly Royalty payment, the Buyer shall deliver to the Sellers' Representative a simple report showing the Unit Sales made during such prior month."

43. Because the closing date of the sale was November 8, 2022, Royalties and reports were due on each of December 15, 2022 and January 15, 2023. However, none were received and as such, GridKor has been in breach of Section XIII(e) of the SPA since the 15th of December.

44. In addition, GridKor stands in breach of its obligation to "use its reasonable best efforts to ensure that Business Entity's Intellectual Property Rights are used … with a view to further the Business Entity's business and increase the Business Entity's sales following Closing." *SPA §XIII(f)(c)*. GridKor has failed to leverage the very valuable trademarks and service marks of the Company in any marketing or promotional campaign in any effort to promote sales. GridKor has also failed to pay the open legal bill of the Company's trademark counsel responsible for maintaining and protecting the Company's trademarks.

45. GridKor has repeatedly refused to direct the funds necessary to effect the proper transfer of the Company's domain and ensure that the domain name is not canceled. This refusal constitutes a breach of its obligation to "maintain all Intellectual Property Rights and to pay all fees, contingents, and expenses whatsoever relating to the Intellectual Property Rights in order to keep the Intellectual Property Rights valid and in force." *SPA §XIII(f)(b)*.

46. The Sellers' Representative has informed GridKor that she has attempted to obtain approval of the sale of ownership from the SBA and as such the SBA loans have not transferred with the Company. GridKor has nevertheless failed to "pay at least the minimum monthly agreed upon amount with the SBA to keep the Seller in good standing …[and] promptly pay in full the outstanding obligations under the SBA Loans and shall indemnify and hold harmless the Sellers from any liability thereunder" as required under Section XIII(j) of the SPA.[2]

47. Rather than endeavor to meet its obligations, GridKor has instead, through counsel, threatened to sue Sellers for rescission of the SPA. Sellers have reiterated that they are in full compliance with the SPA, and that despite the full waiver of due diligence, the Sellers nevertheless provided full transparency and all financial and operational information before and after the

---

[2] Upon information and belief, the SPA now requires that the loans be repaid in full, for which GridKor is responsible.

Closing. Sellers have made demand numerous times that Buyers meet their obligations, but have been left with no choice other than to bring this lawsuit.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

48. Urben repeats the allegations of the preceding paragraphs as though fully set forth herein.

49. The SPA constitutes a valid and binding contract.

50. The Sellers have complied with all their obligations under the SPA.

51. GridKor has failed to meet its obligations as fully described above. Specifically, GridKor has breached the following provisions of the SPA: **Section XIII(e)** for failure to pay the monthly royalty and provide the required monthly reports; Section **XIII(g)(i) and (iii)** by causing the Business Entity to case carrying out a substantial part of its activities and/or materially changing its business model and/or scope of business thereby accelerating the $3.5 million royalty; **Section XIII(i)** by failing to use its reasonable best efforts to effectively market and promote the inventory of the Units of the Company also thereby accelerating the $3.5 million royalty; **Section XIII(f)** by failing to use its reasonable best efforts to ensure that the Company's Intellectual Property Rights are used to further the Company's business and increase the Company's sales and failing to direct the necessary funds to preserve and enforce Intellectual Property Rights; and **Section XIII(j)** to pay the outstanding amounts on the SBA Loans which have become due and payable.

52. Bryant and Alyssa, as alter egos of GridKor, are liable for GridKor's conduct.

53. Urben has been damaged in an amount to be determined at trial, but shall in no event be less than the maximum aggregate royalty of the SPA of $3.5 million and the full outstanding amounts of the SBA Loans, plus interest.

**WHEREFORE**, the Sellers' Representative demands judgment on all Counts of the Complaint and request that the Court enter judgment in Sellers' Representative's favor and against Defendants in the Complaint as follows:

1. On the First Cause of Action, awarding Plaintiff damages of the full accelerated $3,500,000 Royalty with interest, and the full outstanding amounts of the SBA Loans of $59,700 plus interest accrued thereon; and

2. Awarding such other and further relief as the Court deems just and proper.

**Plaintiff requests a jury trial on all issues so triable.**

Dated:  January 31, 2023

        RESTON LAW GROUP, LLC

            */s/ John A. Bonello*
        John A. Bonello
        2100 Reston Parkway
        Suite 450
        Reston, Virginia 20191
        Phone: 703-264-2220
        Fax: 703-264-2226
        Email: jbonello@restonlaw.com

        -and-

        KIRSCH & NIEHAUS, PLLC
        (pro hac vice motions to be filed)

        Emily B. Kirsch
        Craig S. Tarasoff
        950 Third Avenue, Suite 1900
        New York, New York 10022
        (646) 415-7530
        emily.kirsch@kirschniehaus.com
        craig.tarasoff@kirschniehaus.com

*Attorneys for Plaintiff Avonda Urben, on behalf of herself and in her capacity as the Sellers' Representative*