## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| AVONDA URBEN, on behalf of herself and in her capacity as the Sellers' Representative, | ) ) ) |
| Plaintiff, | ) Case No. 1:23-cv-00138-TSE-IDD ) |
| v. | ) ) |
| GRIDKOR, LLC, MICHAEL BRYANT, KORDEV, LL, and ALYSSA SCHRECENGOST BRYANT, | ) ) ) ) |
| Defendants. | ) ) |
| GRIDKOR, LLC, | ) ) |
| Counterclaim and Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| AVONDA URBEN; JOHN DOE NOS. 1-5; and JANE DOE NOS. 1-5, | ) ) ) |
| Counterclaim and/or Third-Party Defendants | ) ) ) |

**GRIDKOR, LLC'S ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant GridKor, LLC hereby answers and asserts affirmative defenses to Plaintiff Avonda Urben's First Amended Complaint as follows:

1.      The allegations of paragraph 1 purport to state legal conclusions and characterize and/or interpret Plaintiff's First Amended Complaint and/or a "Stock (Shares) Purchase Agreement," both of which documents speak for themselves and to which no response is required. To the extent a response is required, the allegations of paragraph 1 are denied.

2.      Denied.

3.      Denied.

4.      The allegations of paragraph 4 purport to state legal conclusions and/or characterize and interpret Plaintiff's First Amended Complaint, to which no response is required.  To the extent a response is required, the allegations of paragraph 4 are denied.

5.      Denied.

6.      Denied.

7.      On information and belief, admitted.

8.      Admitted in part, denied in part.  GridKor admits it is a limited liability company organized under the laws of the State of Wyoming, that its Wyoming address is as alleged, and that KorDev LLC is a member of GridKor.  The allegations of paragraph 8 are otherwise denied.

9.      Admitted in part, denied in part.  GridKor admits that Mr. Bryant is an individual and a resident and citizen of Pennsylvania, and that he is the President of GridKor.  The remaining allegations of paragraph 7 purport to state a legal conclusion to which no response is required.  To the extent a response is required, the remaining allegations are denied.

10.     Admitted in part, denied in part.  GridKor admits that Mrs. Bryant is an individual and a resident and citizen of Pennsylvania.  The allegations of paragraph 10 are otherwise denied.

11.     Admitted in part, denied in part.  GridKor admits that KorDev is a limited liability company organized under the laws of the State of Wyoming; that its Wyoming address is as alleged; that KorDev and GridKor both use the same registered agent at that address, Registered Agents Inc.; that KorDev's principal place of business is as alleged; and that Mr. Bryant is the sole member of KorDev.  The allegations of paragraph 11 are otherwise denied.

12.     Denied.

13.     Denied.

14.     Denied.

15.     The allegations of paragraph 15 purport to state legal conclusions and characterize and/or interpret a filing in a separate litigation, which document speaks for itself and to which no response is required.  To the extent a response is required, the allegations of paragraph 15 are denied.

16.     The allegations of paragraph 16 purport to state legal conclusions to which no response is required.  To the extent a response is required, the allegations of paragraph 16 are denied.  GridKor notes that Plaintiff has never identified the Sellers, the purported shareholders of Perfect V Enterprises, Inc., who are a necessary party to this action.  Not knowing the identity of the purported Sellers or their citizenship, GridKor is without information sufficient to determine whether this Court in fact has jurisdiction under 28 U.S.C. § 1332.

17.     The allegations of paragraph 17 purport to state legal conclusions to which no response is required.  To the extent a response is required, the allegations of paragraph 17 are denied.

18.     GridKor is without information sufficient to admit or deny the allegations of paragraph 18 and, therefore, denies the same.

19.     GridKor is without information sufficient to admit or deny the allegations of paragraph 19 and, therefore, denies the same.

20.     GridKor is without information sufficient to admit or deny the allegations of paragraph 20 and, therefore, denies the same.

21.     On information and belief, admitted.

22.     GridKor is without information sufficient to admit or deny the allegations of

paragraph 22 and, therefore, denies the same.

23.     Admitted in part, denied in part.  GridKor admits that Mr. Bryant met Ms. Urben through a mutual acquaintance in August 2022 (though "business colleague" is not entirely accurate), that Mr. Bryant is a principal of KorDev LLC, that KorDev LLC is a company that does digital marketing and brand building (among other things).  GridKor further admits that Mr. Bryant had the financial ability to increase the Company's production and manufacturing, to increase effective marketing of the brand, and had the available capital and requisite expertise and skills to grow the Company.  The allegations of paragraph 23 are otherwise denied.

24.     Admitted in part, denied in part.  GridKor admits that Mr. Bryant described, accurately, the abilities and successes of KorDev in digital marketing and brand building.  The allegations of paragraph 24 are otherwise denied.

25.     Admitted in part, denied in part.  GridKor admits an NDA was agreed upon and that Plaintiff provided certain information about the Company.  The allegations of paragraph 25 are otherwise denied.

26.     Admitted in part, denied in part.  GridKor admits Plaintiff sent various emails on or about August 2, 2022.  The allegations of paragraph 26, however, purport to state, characterize and/or interpret the contents of those emails and other documents, which documents speak for themselves.  To the extent a response is required, the remaining allegations of paragraph 26 are denied.

27.     The allegations of paragraph 27 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 27 are denied.

28.     The allegations of paragraph 28 purport to state, characterize and/or interpret the

contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 28 are denied.

29.     The allegations of paragraph 29 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 29 are denied.

30.     The allegations of paragraph 30 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 30 are denied.

31.     The allegations of paragraph 31 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 31 are denied.

32.     Admitted.

33.     Admitted in part, denied in part.  GridKor admits that Plaintiff stated the Company needed cash to run the business and grow the Company and its brand.  The allegations of paragraph 33 are otherwise denied.

34.     Admitted in part, denied in part.  GridKor admits that it had the financial ability to increase the Company's production and manufacturing, to increase effective marketing of the brand, and had the available capital and requisite expertise and skills to grow the Company.  The allegations of paragraph 34 are otherwise denied.

35.     Admitted in part, denied in part.  GridKor admits that it had the financial ability to increase the Company's production and manufacturing, to increase effective marketing of the brand, and had the available capital and requisite expertise and skills to grow the Company.  The allegations of paragraph 35 are otherwise denied.

36.     Admitted in part, denied in part.  GridKor admits that it had the financial ability to increase the Company's production and manufacturing, to increase effective marketing of the brand, and had the available capital and requisite expertise and skills to grow the Company.  The allegations of paragraph 36 are otherwise denied.

37.     Denied.

38.     The allegations of paragraph 38 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 38 are denied.

39.     The allegations of paragraph 39 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 39 are denied.

40.     The allegations of paragraph 40 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 40 are denied.

41.     The allegations of paragraph 41 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 41 are denied.

42.     The allegations of paragraph 42 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 42 are denied.

43.     The allegations of paragraph 43 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 43 are denied.

44.     The allegations of paragraph 44 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 44 are denied.

45.     The allegations of paragraph 45 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 45 are denied.

46.     The allegations of paragraph 46 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 46 are denied.

47.     GridKor admits that it offered Plaintiff the opportunity to, in the future, earn back equity in the Company if she performed tasks relating to pursuing licensing arrangements, which GridKor was willing to do.  Plaintiff, however, never undertook those efforts.  The allegations of paragraph 47 are otherwise denied.

48.     GridKor admits that it offered Plaintiff the opportunity to, in the future, earn back equity in the Company if she performed tasks relating to pursuing licensing arrangements, which GridKor was willing to do.  Plaintiff, however, never undertook those efforts.  The allegations of paragraph 48 are otherwise denied.

49.     GridKor admits that it offered Plaintiff the opportunity to, in the future, earn back equity in the Company if she performed tasks relating to pursuing licensing arrangements, which GridKor was willing to do.  Plaintiff, however, never undertook those efforts.  The allegations of paragraph 49 are otherwise denied.

50.     Admitted in part, denied in part.  GridKor admits that Mr. Bryant and Plaintiff discussed as a possibility KorDev providing digital marketing and brand building services to

Plaintiff.  The allegations of paragraph 50 are otherwise denied.

51.     Admitted.

52.     The allegations of paragraph 52 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 52 are denied.

53.     The allegations of paragraph 53 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 53 are denied.

54.     Admitted in part; denied in part.  GridKor admits that Exhibit A to the First Amended Complaint appears to be a copy of the "Stock (Shares) Purchase Agreement" executed by Mr. Bryant and Ms. Urben.  The allegations of paragraph 54 are otherwise denied.

55.     The allegations of paragraph 55 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 55 are denied.

56.     The allegations of paragraph 56 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 56 are denied.

57.     The allegations of paragraph 57 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 57 are denied.

58.     The allegations of paragraph 58 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 58 are denied.

59.     The allegations of paragraph 59 purport to state, characterize and/or interpret the contents of a document(s), which document(s) speak for themselves.  To the extent a response is required, the allegations of paragraph 59 are denied.

60.     Admitted in part; denied in part.  GridKor admits that it initially directed Plaintiff to Mr. Tobin to effect the transfer of authority over the Company's bank accounts, but this proved more complicated than anticipated, forcing Mr. Bryant to personally travel to Virginia.  The allegations of paragraph 60 are otherwise denied.

61.     Admitted in part; denied in part.  GridKor admits that it initially directed Plaintiff to Mr. Tobin to effect the transfer of authority over the Company's bank accounts, but this proved more complicated than anticipated, forcing Mr. Bryant to personally travel to Virginia.  The allegations of paragraph 61 are otherwise denied.

62.     Admitted in part; denied in part.  GridKor admits that Mr. Bryant met Ms. Urben on or about December 8, 2022 at a TD Bank location in Virginia.  Mrs. Bryant accompanied him. The purpose of the trip was to remove Ms. Urben as an authorized person on what she represented were the Company's two bank accounts, one at TD Bank and one at Chase Bank, and add a new authorized person in her place.  In the middle of completing the paperwork to do this, the manager at TD Bank requested that Ms. Urben provide a password or code for the account so as to confirm her identity and authority.  She was unable to provide the correct password or code, claiming she had forgotten.  The manager stated he could not remove Ms. Urben from the account without the password or code, but he could close the account.  Rather than make a second trip, Mr. Bryant elected to proceed in this fashion.  The manager asked if he would accept cash and Mr. Bryant said yes.  Ms. Urben claimed to also not have her password or code for the Chase Bank account, so Mr. Bryant did not even attempt to remove her from that account and instead asked Ms. Urben to close

the account as she had the TD Bank one.  The allegations of paragraph 62 are otherwise denied.

63.     GridKor admits it has not injected funds "into the Company" or its accounts (though it has expended money on behalf of the Company), or opened new bank accounts for the Company, but GridKor has not done so because Ms. Urben failed to provide the information necessary to do so, including the taxpayer identification number for the Company.  The allegations of paragraph 63 are otherwise denied.

64.     Admitted in part; denied in part.  Ms. Urben was asked to provide various information, email accounts, records, and other property of the Company, which she failed to do. Unable to maintain sales channels or ship product without this information and property, the Company informed certain third parties that it would be pausing momentarily until the issue could be resolved.  But it never was.  GridKor further admits that the Company was unable to fulfill certain orders (albeit less than the 50 alleged) because the supplier refused to release inventory based upon substantial unpaid invoices which Plaintiff and/or Sellers had failed to disclose.  The allegations of paragraph 64 are otherwise denied.

65.     GridKor admits that it did not commit resources to unnecessary or unjustified legal expenses, but denies that it failed to take any necessary steps to protect the Company's intellectual property and otherwise denies the allegations of paragraph 65.

66.     GridKor admits that it did not commit resources to unnecessary or unjustified legal expenses, but denies that it failed to take any necessary steps to protect the Company's intellectual property and otherwise denies the allegations of paragraph 66.

67.     Admitted in part; denied in part.  GridKor admits that, after closing, it became aware that the Company's warehouse in the United States was refusing to release inventory to fill orders based upon unpaid bills.  However, the amount owed the warehouse was not $4,800 as

Plaintiff claims, but nearly $13,000.  Plaintiff never revealed this information to GridKor, either before or after the closing.  Plaintiff only learned this from the warehouse, though it had no ability to verify the vendor's claim because Plaintiff never turned over the Company's records or emails. The allegations of paragraph 67 are otherwise denied.

68.     Admitted in part; denied in part.  GridKor admits that, after closing, it became aware that the Company's warehouse in the United States was refusing to release inventory to fill orders based upon unpaid bills.  However, the amount owed the warehouse was not $4,800 as Plaintiff claims, but nearly $13,000.  Plaintiff never revealed this information to GridKor, either before or after the closing.  Plaintiff only learned this from the warehouse, though it had no ability to verify the vendor's claim because Plaintiff never turned over the Company's records or emails. The allegations of paragraph 68 are otherwise denied.

69.     Denied.

70.     Admitted in part; denied in part.  The Company has been unable to pay a number of claimed bills or outstanding liabilities which were not disclosed by Ms. Urben and/or Sellers and which the Company has been unable to verify because Ms. Urben has failed to turn over the Company's email accounts, account system, records, and other necessary information.   The allegations of paragraph 70 are otherwise denied.

71.     Admitted in part; denied in part.  The Company has been unable to pay a number of claimed bills or outstanding liabilities which were not disclosed by Ms. Urben and/or Sellers and which the Company has been unable to verify because Ms. Urben has failed to turn over the Company's email accounts, account system, records, and other necessary information.   The allegations of paragraph 71 are otherwise denied.

72.     Admitted in part; denied in part.  The Company has been unable to pay a number

of claimed bills or outstanding liabilities which were not disclosed by Ms. Urben and/or Sellers and which the Company has been unable to verify because Ms. Urben has failed to turn over the Company's email accounts, account system, records, and other necessary information. The allegations of paragraph 72 are otherwise denied.

73.     Admitted in part; denied in part. The Company has been unable to pay a number of claimed bills or outstanding liabilities which were not disclosed by Ms. Urben and/or Sellers and which the Company has been unable to verify because Ms. Urben has failed to turn over the Company's email accounts, account system, records, and other necessary information. The allegations of paragraph 73 are otherwise denied.

74.     Admitted in part; denied in part. The Company has been unable to pay a number of claimed bills or outstanding liabilities which were not disclosed by Ms. Urben and/or Sellers and which the Company has been unable to verify because Ms. Urben has failed to turn over the Company's email accounts, account system, records, and other necessary information. The allegations of paragraph 74 are otherwise denied.

75.     Admitted in part; denied in part. The Company has been unable to pay a number of claimed bills or outstanding liabilities which were not disclosed by Ms. Urben and/or Sellers and which the Company has been unable to verify because Ms. Urben has failed to turn over the Company's email accounts, account system, records, and other necessary information. The allegations of paragraph 75 are otherwise denied.

76.     Admitted in part; denied in part. The Company has been unable to pay a number of claimed bills or outstanding liabilities which were not disclosed by Ms. Urben and/or Sellers and which the Company has been unable to verify because Ms. Urben has failed to turn over the Company's email accounts, account system, records, and other necessary information. The

allegations of paragraph 76 are otherwise denied.

77. The allegations of paragraph 77 purport to state legal conclusions and/or characterize and interpret a document(s), to which no response is required. To the extent a response is required, the allegations of paragraph 77 are denied.

78. The allegations of paragraph 78 purport to state legal conclusions and/or characterize and interpret a document(s), to which no response is required. To the extent a response is required, the allegations of paragraph 78 are denied.

79. The allegations of paragraph 79 purport to state legal conclusions and/or characterize and interpret a document(s), to which no response is required. To the extent a response is required, the allegations of paragraph 79 are denied.

80. The allegations of paragraph 80 purport to state legal conclusions and/or characterize and interpret a document(s), to which no response is required. To the extent a response is required, the allegations of paragraph 80 are denied.

81. The allegations of paragraph 81 purport to state legal conclusions and/or characterize and interpret a document(s), to which no response is required. To the extent a response is required, the allegations of paragraph 81 are denied.

82. The allegations of paragraph 82 purport to state legal conclusions and/or characterize and interpret a document(s), to which no response is required. To the extent a response is required, the allegations of paragraph 82 are denied.

83. The allegations of paragraph 83 purport to state legal conclusions and/or characterize and interpret a document(s), to which no response is required. To the extent a response is required, the allegations of paragraph 83 are denied.

84. The allegations of paragraph 84 purport to state legal conclusions and/or

characterize and interpret a document(s), to which no response is required.  To the extent a response is required, the allegations of paragraph 84 are denied.

85.     Admitted in part, denied in part.  GridKor admits that it rescinded the SPA, which it confirmed by letter dated February 23, 2023.  The contents of that document speak for itself and, to the extent a response is required, the remaining allegations of paragraph 85 are denied.

86.     Denied.

87.     Admitted in part; denied in part.  GridKor admits that it has repeatedly requested that Ms. Urben and/or the as-yet-unidentified Sellers perform under the "Stock (Shares) Purchase Agreement," relinquish control of the Company and all of its assets, and turn over the records, accounts, systems, and other information of the Company.  GridKor further admits that it made clear that if Ms. Urben and/or the Sellers did not do so, GridKor would have no choice but to rescind the "Stock (Shares) Purchase Agreement," and GridKor ultimately did so.  The allegations of paragraph 87 are otherwise denied.

88.     GridKor hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

89.     On information and belief, admitted.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     GridKor hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    GridKor hereby incorporates by reference each of its responses to the preceding paragraphs as if set forth fully herein.

104.    On information and belief, admitted.

105.    Denied.

106.    The allegations of paragraph 106 purport to state legal conclusions as to multiple different persons and entities, to which no response is required.  To the extent a response is required, the allegations of paragraph 106 are denied.

107.    Admitted.

108.    Denied.

109.    Denied.

110.    Denied.

GridKor denies any and all allegations set forth in Plaintiff's "WHEREFORE" clause and subparagraphs the same, and denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof to which GridKor is not otherwise subject under the law, GridKor asserts and alleges the following additional defenses to Plaintiff's First Amended

Complaint:

1.      GridKor denies all allegations not specifically admitted herein and denies that Plaintiff is entitled to any of the relief requested.

2.      Plaintiff's claims fail to state a claim upon which relief may be granted.

3.      Plaintiff lacks standing to assert the claims in the First Amended Complaint.

4.      Plaintiff has failed to join necessary parties, namely: the Sellers.

5.      To the extent GridKor failed to perform any contractual obligation to Plaintiff or Sellers, it is relieved from performing by Plaintiff and/or Sellers' prior material breaches.

6.      To the extent GridKor failed to perform any contractual obligation, it did so as a result of the acts, omissions and failures of Plaintiff and/or the Sellers.

7.      Plaintiff and/or Sellers failed to perform under the "Stock (Shares) Purchase Agreement," thus relieving GridKor of any obligations thereunder.

8.      Plaintiff and/or Sellers failed to deliver access to and control of the Company to GridKor, thus interfering with GridKor's ability to perform under the "Stock (Shares) Purchase Agreement" and relieving it of any obligations thereunder.

9.      Plaintiff seeks an unenforceable liquidated damages penalty because her damages, if any, are grossly disproportionate to any harm actually suffered.

10.      Plaintiff's claim is barred because she has not suffered any damages either generally or for which GridKor is responsible.

11.      Plaintiff's damages, if any, were the result of her own neglect, negligence, mistake, breaches of contract, and course of conduct.

12.      Plaintiff's claim is barred in whole or in part by the doctrines of laches, waiver, estoppel, unclean hands, and release.

13.     Plaintiff and/or Sellers failed to mitigate their damages, if any.

14.     GridKor hereby gives notice that it intends to rely upon any other defenses that may become available or apparent during discovery and hereby reserves the right to amend this Answer to assert any such defense.

## JURY DEMAND

GridKor hereby requests a trial by jury on all issues so triable.

## DEFENDANT'S PRAYER FOR RELIEF AND GENERAL DENIAL

Except as expressly admitted herein by GridKor, each and every other allegation contained in Plaintiff's First Amended Complaint, whether in numbered or unnumbered paragraphs or in headings, are hereby denied.

WHEREFORE, having fully answered the First Amended Complaint and having raised the defenses above, GidKor respectfully requests that the Court dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice, enter judgment in favor of GridKor and against Plaintiff, and award GridKor its attorneys' fees, costs, and such other relief as is just and proper.

## AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff GridKor, LLC hereby alleges for its Counterclaim and Third-Party Complaint as follows:

1.      Following a series of discussions and exchanges of information over the course of several months, GridKor and Counterclaim Defendant Avonda Urben, acting as the representative of certain unidentified Sellers (Third-Party Defendants John Doe Nos. 1-5 and Jane Doe Nos. 1-5), executed a "Stock (Shares) Purchase Agreement" ("the Agreement") in early November 2022 pursuant to which GridKor had hoped and understood it would be acquiring Perfect V. Enterprises, Inc. ("the Company").

2.      Ms. Urben and/or the unidentified Sellers, however, materially failed to perform under the Agreement.  They never delivered any of the stock of the Company (much less all of the stock) to GridKor.  They failed to deliver access to and control of the Company's assets, records, bank accounts, email accounts, vendor portals, website, systems, and even basic identifying information.  Unable to access any historical information or use the Company's accounts and systems, the individuals tasked with running the Company were left without the information, records, or Company property needed to do so.

3.      Both GridKor and the Company's new management repeatedly requested the information, records, and access needed to run the Company.  Plaintiff and/or Sellers repeatedly refused or ignored those requests.

4.      Further, following the execution of the Agreement, several representations made by Ms. Urben during the parties' negotiations proved to be false, materially incomplete, and/or misleading.  Ms. Urben's representations about the inventory available to the Company, approval or endorsement of the product by a physician, and the nature and extent of the Company's

liabilities all turned out to be false.

5.      GridKor made a good faith effort to operate the Company, or at least maintain the status quo while it attempted to obtain the information and property needed to run the Company and perform under the Agreement.  Ms. Urben and the Sellers, however, never performed under the Agreement or transferred control to GridKor.

6.      Accordingly, GridKor brings claims for breach of contract, fraudulent inducement, and negligent misrepresentation and seeks rescission of the Agreement or, in the alternative, injunctive relief and damages.

## PARTIES

7.      Counterclaim Plaintiff and Third-Party Plaintiff GridKor, LLC is a limited liability company created and existing under the laws of Wyoming with its principal place of business located in Pennsylvania.  GridKor's members are citizens for diversity purposes of Pennsylvania, Texas, Massachusetts, and New Mexico.

8.      Counterclaim Defendant Avonda Urben is, on information and belief, an individual and a citizen and resident of Virginia.

9.      John Doe Nos. 1-5 and Jane Doe Nos. 1-5 are the owners of the stock of Perfect V. Enterprises, Inc.  Their identities, residence, and citizenship are unknown to GridKor.

## JURISDICTION AND VENUE

10.     To the best of GridKor's knowledge, this Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 and/or § 1367(a).

11.     To the best of GridKor's knowledge, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and/or § 1391(c).

## FACTUAL ALLEGATIONS

12.     In or about August 2022, Michael Bryant and Ms. Urben began discussions regarding the potential sale of the Company.

13.     Mr. Bryant and Ms. Urben's discussions continued over the course of the months that followed, ultimately culminating in the execution of the Agreement in early November 2022.

14.     Over the course of those discussions, Ms. Urben represented, on behalf of herself and the Sellers, a number of things, including:

        a.     That the Company had a certain amount of inventory that was free and available;

        b.     That the Company had certain debts and liabilities, the specifics of which were provided to GridKor; and

        c.     That the Company's product had been approved or endorsed by an independent physician.

15.     Specifically, in a spreadsheet Plaintiff provided to Mr. Bryant on August 2, 2022, via email, Plaintiff represented that the Company had on hand inventory valued at $390,419.50 (using wholesale prices).  In calls and meetings that followed on that same day and others prior to the closing, Plaintiff consistently reiterated that the Company had $400,000 in inventory on hand and available.

16.     Further, in a separate spreadsheet Plaintiff emailed to Mr. Bryant on August 2, 2022, Plaintiff identified outstanding accounts payable to just five vendors totaling $43,360.

17.     Further, in telephone calls in August 2022 and at least one subsequent meeting in September 2022, Plaintiff represented that the Company's product had been approved or endorsed by an independent physician.

18.     Based upon the above representations and the information that Defendants provided to Mr. Bryant and GridKor and unaware of the falsity and incompleteness thereof, GridKor proceeded to negotiate the terms of an acquisition of the Company.

19.     Mr. Bryant executed the Agreement on November 7, 2022 on behalf of GridKor. Ms. Urben executed the Agreement the following day on behalf of Sellers.

20.     Among other things, the Agreement required Plaintiff and/or Sellers to deliver the stock, along with any stock certificates, within ten days of closing, to add Mr. Bryant (and remove Ms. Urben) as an authorized signatory on the Company's bank accounts within two days, and to transfer and/or deliver all assets, accounts, and property belonging to the Company.  Plaintiff and/or Sellers failed to do any of these things.

21.     The Company's assets include, among other things, inventory, bank accounts, accounting and bookkeeping records, bank records, accounting platforms, and intellectual and digital property such as the Company's email accounts, website, domain names, vendor portals, and associated passwords.  Access to and use of this property is necessary to run the business and protect the brand.

22.     From the beginning, however, Plaintiff and/or Sellers refused to transfer or otherwise deliver the above property and/or access thereto to GridKor.

23.     In attempting to manage the Company's relationships and access its inventory, it became clear that Plaintiff and/or Sellers had materially mispresented the Company's liabilities, describing them as a fraction of the actual monies owed to vendors, attorneys, and others.

24.     Among other undisclosed debts and liabilities, Plaintiff and/or Sellers had not disclosed that the inventory they had represented as available was not, in fact, available, because it was being held by the supplier based upon unpaid invoices.

25.     Shortly after the closing, on November 10, 2022, GridKor was provided a report showing the Company had only $333,637.00 in inventory.  Soon after that, GridKor learned that while that inventory may have existed, it was not available to the Company because it had been frozen based upon unpaid bills.

26.     Numerous other creditors emerged, reflecting debts in excess of what Plaintiff and/or Sellers had disclosed.  GridKor and the Company's new management discovered creditors that Defendants had failed to disclose.  Even for those creditors Plaintiff and/or Sellers had disclosed, some were owed more than Plaintiff and/or Sellers had represented.

27.     After the closing, on November 21, 2022, Plaintiff provided an Accounts Payable report apparently generated from QuickBooks which showed outstanding accounts payable due to 15 vendors totaling $62,212.24—three times as many creditors as had previously been disclosed and a more than 40 percent increase in the amount owed.

28.     Even the post-closing report, however, proved to be inaccurate as it omitted two invoices from the Company's warehouse dating to December 2021 and March 2022, and thus understated the amount owed to that vendor by more than $7,000.

29.     In sum, Plaintiff and/or Sellers had left a trail of disgruntled suppliers, vendors, and customers, with whom GridKor and new management were left to contend all the while without the ability to verify the creditors' claims against the Company's own records.

30.     Plaintiff and/or Sellers' misrepresentations were not confined to the nature and extent of the Company's liabilities.  It turned out that the physician who supposedly had approved or endorsed the Company's product was, in fact, a family member or friend of Ms. Urben.

31.     Plaintiff and/or Sellers' refusal to deliver access to the Company's property, including prior communications located in the Company's email accounts, exacerbated these

problems.  Without this information, the Company could not access its historical information about the alleged debts, hindering its ability to satisfy vendors and generate income.

32.     Plaintiff and/or Sellers had an obligation to deliver *all* property belonging to the Company, which they steadfastly refused to do.  Nevertheless, GridKor made its Chief Marketing Officer available to Ms. Urben's counsel on January 23, 2023, to explain in detail the information and property that was missing but required to operate the business.  Further, GridKor provided Ms. Urben's counsel with a written list of specific information and property required as recently as February 8, 2023, all in an attempt to salvage the transaction.  GridKor even offered to overlook the fraudulent misrepresentations, pay off the bills Plaintiff and/or Sellers failed to disclose and attempt to make a success of the business if Plaintiff and/or Sellers would just provide the information needed.  Plaintiff and/or Sellers still refused.

33.     On February 23, 2023, GridKor provided Ms. Urben with formal notice of its rescission of the Agreement.

### Count I – Breach of Contract

34.     GridKor hereby repeats the allegations of the preceding paragraphs and incorporates them as if set forth fully herein.

35.     The Stock (Shares) Purchase Agreement is a valid and enforceable contract.

36.     Plaintiff and/or Sellers breached the Agreement by:

a.     Failing to deliver shares of Company stock, along with any stock certificates, to GridKor;

b.     Failing to add signatory authorization for Michael Bryant to the Company's bank accounts, and remove Ms. Urben and any others from such accounts, within two business days, or at all; and

c.      Failing to transfer access to and control of the assets, records, property and systems of the Company, including the Company's accounting system, its email accounts, its tax records, its accounting and bookkeeping records, its website, its domain names, and its vendor portals.

37.     GridKor has suffered damages as a result of Plaintiff and/or Sellers' breaches.

38.     GridKor is entitled to rescind the Agreement as a result of Plaintiff and/or Sellers' breaches and failure of performance.

**Count II – Breach of Covenant of Good Faith and Fair Dealing**

39.     GridKor hereby repeats the allegations of the preceding paragraphs and incorporates them as if set forth fully herein.

40.     The Stock (Shares) Purchase Agreement is a valid and enforceable contract.

41.     Plaintiff and the Sellers owed GridKor a duty of good faith and fair dealing.

42.     The benefit of the bargain was for Seller's to sell and transfer control of the Company to GridKor in exchange for $1 and provisions providing for future royalties on sales.

43.     By failing to transfer to GridKor access to and control of the assets, records, property and systems of the Company, including the Company's accounting system, its email accounts, its tax records, its accounting and bookkeeping records, its website, its domain names, and its vendor portals, Plaintiff and Sellers have denied GridKor the benefit of the bargain.

44.     In doing so, Plaintiff and Sellers have acted arbitrarily, unreasonably, and in bad faith.

45.     GridKor has suffered damages as a result of Plaintiff and/or Sellers' breaches.

46.     GridKor is entitled to rescind the Agreement as a result of Plaintiff and/or Sellers' breaches and failure of performance.

24

**Count III – Fraudulent Inducement**

47.     GridKor hereby repeats the allegations of the preceding paragraphs and incorporates them as if set forth fully herein.

48.     Plaintiff and/or Sellers knowingly, and with the intent to defraud, made or caused to be made misrepresentations and omissions of material fact, or such misrepresentations and omissions of material fact were made on Plaintiff and/or Sellers' behalf, including but not limited to:

    a.     That the Company had a certain amount of inventory that was free and available;

    b.     That the Company had certain debts and liabilities, the specifics of which were provided to GridKor; and

    c.     That the Company's product had been approved or endorsed by an independent physician.

49.     The misrepresentations and/or omissions were false and misleading at the time they were made.

50.     Plaintiff and/or Sellers or others acting on their behalf made those misrepresentations and/or omissions, or caused them to be made, with knowledge of their falsity or recklessly without regard for their truthfulness, with the intent to deceive GridKor, and with the intent to induce GridKor to enter into the Agreement and consummate the transaction at closing.

51.     GridKor reasonably relied to its detriment on Plaintiff and/or Sellers misrepresentations in choosing to enter into the Agreement and to consummate the transaction at closing.

52.     As parties fraudulently induced to enter to a contract and consummate the related

25

transactions, GridKor is entitled to rescind that contract and those transactions.

53.     In the alternative, GridKor requests monetary damages as a result of Plaintiff and/or Sellers' fraudulent conduct in an amount to be determined at trial.

**Count IV – Negligent Misrepresentation**

54.     GridKor hereby repeats the allegations of the preceding paragraphs and incorporates them as if set forth fully herein.

55.     If the false statements or omissions set forth above were not made with knowledge or recklessness as to their falsity, then they were made negligently, or without due care, by Plaintiff and/or Sellers, or on their behalf.

56.     Plaintiff and/or Sellers provided the information set forth above to GridKor in the course of their business and failed to exercise that care and competence in obtaining and communicating the information which GridKor was justified in expecting.

57.     GridKor was the entity for whose guidance the financial information was supplied. Plaintiff and/or Sellers knew that GridKor would reasonably rely on their representations, and Plaintiff and/or Sellers intended to influence GridKor through those representations.

58.     GridKor was, in fact, deceived by these misrepresentations and omissions and reasonably and justifiably relied to its detriment on these misrepresentations and omissions.

59.     As a direct and proximate result of these negligent misrepresentations, GridKor entered into and closed the Agreement.  GridKor would never have done so if it had known the truth.

60.     GridKor has suffered damages as a result of Plaintiff and/or Sellers' misrepresentations.

61.     GridKor is entitled to rescind the Agreement as a result of Plaintiff and/or Sellers'

misrepresentations.

## JURY DEMAND

GridKor hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, GridKor respectfully requests that the Court:

1.    Enter judgment declaring the Stock (Shares) Purchase Agreement and the transactions consummated pursuant thereto to be rescinded and void *ab initio*;

2.    Award GridKor its costs associated with effecting rescission;

3.    Award GridKor restitution, including costs and attorneys' fees;

4.    In the alternative, award GridKor damages in the amount of the losses suffered as a result of Plaintiff and/or Sellers' conduct;

5.    Award GridKor its attorneys' fees and costs; and

6.    Grant GridKor such further relief as the Court may deem just and equitable.


DATE:  April 12, 2023                       Respectfully submitted,

                                            */s/ Tillman J. Finley*
                                            Tillman J. Finley (VSB No. 93284)
                                            tfinley@marinofinley.com
                                            MARINO FINLEY LLP
                                            818 Connecticut Avenue, N.W., Suite 801
                                            Washington, DC  20006
                                            Tel:  202.223.8888

                                            *Attorneys for GridKor, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2023, I filed the foregoing GRIDKOR, LLC'S ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

<u>/s/ Tillman J. Finley</u>
Tillman J. Finley