## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| AVONDA URBEN, on behalf of herself and in her capacity as the Sellers' Representative, ) ) ) ) | |
| Plaintiff, ) | |
| v. ) | Civ. No. 1:23-cv-00138-TSE-IDD |
| GRIDKOR, LLC, MICHAEL BRYANT, KORDEV, LLC, and ALYSSA SCHRECENGOST BRYANT, ) ) ) ) | |
| Defendants. ) | |
| GRIDKOR, LLC, ) ) | |
| Counterclaim and Third-Party Plaintiff, ) ) | |
| v. ) ) | |
| AVONDA URBEN; JOHN DOE NOS. 1-5; and JANE DOE NOS. 1-5, ) ) ) | |
| Counterclaim and/or Third Party Defendants. ) ) ) | |

## REPLY BRIEF IN SUPPORT OF MOTION
## TO DISMISS AMENDED COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Plaintiff/Counterclaim Defendant Avonda Urben ("Urben" or "Plaintiff"), individually

and in her capacity as the Sellers' Representative for all holders of all the outstanding stock (the

"Sellers") of The Perfect V Enterprises, Inc. ("PVE" or the "Company"), by and through her

undersigned attorneys, respectively submits this Reply Brief in support of her motion to dismiss

the Amended Counterclaims and Third-Party Claims ("Motion to Dismiss") (Dkt. 26) filed by

Defendant/Counterclaim Plaintiff GridKor, LLC ("GridKor") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

GridKor's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss ("Opposition" or "Opp. Br.") (Dkt. 43) does nothing to weaken the conclusion that Claims III and IV, and the portions of Claims I and II that pertain to the purported failure to deliver Company assets, must be dismissed with prejudice. For all the reasons set forth in Plaintiff's moving brief ("Moving Brief" or "Mov. Br."), the Amended Counterclaims fail to allege sufficient facts with the requisite detail to adequately state claims for relief as a matter of law. Because this is already GridKor's second bite at the apple and it still fails to allege the necessary facts, the claims should be dismissed with prejudice.

The portions of Counts I and II, for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively, which purport to rely on non-existent contractual obligations and vague allegations which cannot plausibly be read into the contract must be dismissed for failure to meet the minimum pleading standards set forth in *Twombly* and *Iqbal*. GridKor's Opposition points to no allegations that identify any clear obligation that Plaintiff has failed to meet and points to no law to suggest that a properly specified obligation (stated or implied) has been breached. Instead, GridKor simply argues that the Court should read broad, sweeping requirements into the contract that are simply not there and hold the Plaintiff liable for failing to meet obligations whose nature and scope cannot be fully understood.

What is more, the Amended Counterclaims in fact allege facts *inconsistent* with these claims that Plaintiff withheld Company assets.  For example, GridKor's allegations reveal that post-closing its "new management" was attempting to run the Company and they were in contact with customers, suppliers, vendors and other partners, whom they found to be "disgruntled."

(Dkt. 26, *Am. Counterclaims* ¶ 29).  During this post-closing period, GridKor alleges it learned of accounting irregularities, disgruntled partners and other problems with the Company. GridKor does not then explain *which* assets it obviously had control of and access to that allowed it to try to run the Company and *which* Company assets it maintains Plaintiff purportedly "kept for herself."  It certainly defies logic that GridKor's new management was running the Company making discoveries about financial condition if Plaintiff has "failed to deliver" any Company assets whatsoever.  Nor does GridKor explain how Plaintiff has denied GridKor the fruits of the bargain, specifically ownership of the Company, when GridKor has assumed managerial and operational control and access to enough information to discover that the Company condition is not what GridKor had hoped. Rather, the allegations tell a different story: that GridKor had full control over and access to the Company assets, but GridKor decided it didn't want the Company after all.

With respect to Counts III and IV, GridKor's Opposition does not even attempt to defend the Amended Counterclaims concerning the failure to plead that any statement was false when made or that GridKor reasonably relied on any such statement. Instead, GridKor would have the Court make an unreasonable inference that because inventory or cash on hand changed in modest amounts, wholly consistent with a going concern between August and November, that the finances and inventory numbers provided by the Sellers in August must have been wrong and were intentionally and knowingly falsely represented. Nor does GridKor's Opposition even bother trying to explain how, when it received requested information notwithstanding GridKor's waiver of due diligence, GridKor reasonably relied on any statement or can be said to have made a prudent investigation.

Both because GridKor has now failed twice to plead viable causes of action, and because the facts as alleged indicate that GridKor *has* no viable causes of action, the causes of action and branches thereof addressed in this motion should be dismissed with prejudice.

## ARGUMENT

### I.    THOSE PORTIONS OF COUNTERCLAIMS I AND II BASED ON FAILURE TO DELIVER ASSETS MUST BE DISMISSED

The Amended Counterclaims label Count I as "Breach of Contract" and Count II as "Breach of Implied Covenant and Good Faith and Fair Dealing," but each rests on the same factual allegations. No matter how denominated, Counts I and II fail to state a claim with respect to those branches of the claims alleging that Urben and the Sellers failed to transfer and/or deliver all assets, accounts, and property of PVE.[1]

#### A.    The Amended Counterclaim Fails to Plead a Breach of Contract with Respect to Failure to Deliver Assets

The *sine qua non* of a breach of contract is that there must be a contractual obligation to be breached and a breach of that obligation with resulting damage. *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005) (*citing H-M Wexford, LLC v. Encorp., Inc.*, 832 A.2d 129, 144 (Del. Ch. 2003)). The single allegation supporting the breach of contract claim is that Urben and the Sellers failed to "transfer and/or deliver all assets, accounts, and property belonging to the Company," including "inventory, bank accounts, accounting and bookkeeping records, bank records, accounting platforms, and intellectual and digital property

---

[1]    While denying that she has breached the SPA by failing to deliver physical share certificates, or to add Mr. Bryant (and remove herself) from the Company's checking account, Mr. Urben does not seek dismissal of those branches of Counts I and II that rest on these allegations.

such as the Company's email accounts, website, domain names, vendor portals, and associated passwords." (Dkt. 26, *Am. Counterclaims* ¶¶ 20-22.)  However, the SPA requires no such thing.

In its Opposition, GridKor points to no contractual obligation to "deliver" anything other than the bank accounts and stock certificates. (SPA § XIII(c)). GridKor cites to no legal authority that its ownership requires the Sellers to physically deliver items at a particular time and place to a particular person in a particular manner.   GridKor makes no response to the fact that the SPA nowhere lists "Company assets," so it is not possible to ascertain from the SPA what GridKor expects to be delivered, even if delivery were an obligation.

**B.      The Amended Counterclaim Fails to Plead a Breach of the Implied Covenant of Good Faith and Fair Dealing with Respect to Failure to Deliver Assets**

GridKor argues that it is not creating new wide-ranging obligations out of whole cloth, but simply asking the Court to recognize GridKor's reasonable expectation with respect to the fundamental purpose of the Agreement. Dkt. 43, *Opp. Br. at p.7.* GridKor colorfully states that "Plaintiff's insistence that she can sell PVE ***but keep everything PVE owns for herself*** undercuts the very essence of the agreement, not to mention GridKor's reasonable expectation." Dkt. 43, *Opp. Br. at p.7 (emphasis added).* Yet, the allegations of the Amended Counterclaims are inconsistent with any claim that Plaintiff "kept Company assets for herself."

The Amended Counterclaims detail that GridKor was working with partners and clients and running the business by alleging that "the Plaintiff and/or Sellers had left a trail of disgruntled suppliers, vendors and customers with whom GridKor and new management were left to contend…" Dkt. 26, *Am. Counterclaims ¶ 29.* The issue appeared to be that GridKor had to so contend "…without the ability to verify the creditors' claims against the Company's records." *Id.* Read in the light most favorable to GridKor, at best, the Amended Counterclaims suggest that GridKor was running the Company, had its new management installed, had

5

complete access to customers, accounts, suppliers and vendors, but lacked certain historical information.

Further, the allegations speaking to the fraud claims also show that GridKor has access and/or control of the Company's assets:  "In attempting to manage the Company's relationships and access its inventory, it became clear that Plaintiff and/or Seller had materially misrepresented the Company's liabilities, describing them as a fraction of the actual monies owed to vendors, attorneys and others." Dkt. 26, *Am. Counterclaims ¶22*.  It is not plausible to infer that on the one hand, GridKor had control of and access to what it needed to reach out to manage Company relationships, communicate with vendors, customers and attorneys, and work with the Company's warehouse and inventory control in order to make discoveries about the Company's condition, but on the other hand, GridKor was so completely deprived of control of or access to all the Company assets such that it was in fact denied ownership.  Pleading alternate legal theories is permissible, but pleading alternate factual matters is not and claims will be dismissed if they rest on internally inconsistent facts.  *See, e.g., Gurwell v. Sea World Parks & Entm't, LLC,* 2021 WL 4168503, at *10 (E.D. Va. 2021) (dismissing claims which rest on internally inconsistent facts).

In sum, the only possible inference from the allegations of the Amended Counterclaims allege that ownership was transferred and GridKor was in place in management. If there is a specific asset that was withheld, the withholding of which was responsible for interfering with GridKor's enjoyment of the fundamental fruits of the bargain, it has not been pled.  And there certainly is no allegation that the Seller acted arbitrarily or unreasonably in withholding that specific asset, because that specific asset has not been identified.

Allowing Count II to stand runs afoul of the pleading requirements of Fed. R. Civ. P. 8(a), *Iqbal*, and *Twombly*, as well as Delaware's requirement that a *specific* implied contractual obligation be alleged.  *See Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009). Plaintiff is entitled to notice of what obligation she purportedly breached, and how she purportedly breached it.  Here, GridKor has broadly alleged that Urben has failed to deliver or provide access to *all* Company assets and property, without defining Company assets and property, specifying which Company assets and property were not delivered, or how, when, or where the Court should infer that the property was "supposed" to be delivered.  Absent factual allegations sufficient to show that Urben acted "arbitrarily or unreasonably," or some indication of what was withheld that interfered with GridKor's enjoyment of the fruits of the bargain, the claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

## II.   THE COUNTERCLAIMS SOUNDING IN FRAUD (COUNTS III AND IV) MUST BE DISMISSED

As threshold matter, Virginia law applies to the tort claims. GridKor mistakenly relies on *Hitachi Credit America Corp. v. Signet Bank,* 166 F.3d 614 (4th Cir. 1999) and seeks to apply Delaware law to the fraud claims. In *Hitachi*, the Court found an expansive contractual choice of law clause so broad that it departed from the norm of applying the law of the State where the tortious conduct occurred.  *Hitachi,* 166 F.3d at 628. But the contractual clause at issue there was broader and specifically encompassed not just the agreement at issue but also "*the rights and obligations of the parties hereunder." Hitachi*, 166 F.3d at 624 (emphasis added). The SPA governing law provision extends only to the Agreement and not also to the full gamut of rights and obligations of the parties. Applying applicable choice of law as set forth in Plaintiff's Moving Brief, Virginia law governs the fraud-based claims. *See* Dkt. 32, *Mov. Br. p.10 n.8.*

A.    **GridKor Cannot Allege that the Central Purported
Misrepresentations Were False When Made**

The irreducible foundation of any fraud claim is that a representation be false, and that it
be false when made.  *See Persaud Cos., Inc. v. IBCS Group Inc.*, 425 F. App'x 223, 226 (4th Cir.
2011) (*citing Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (1994)).
GridKor fails to adequately respond to Plaintiff's central point that the Amended Counterclaims
fail to allege that any of the purported misrepresentations were in fact false when made.  GridKor
makes four points ostensibly defending the pleading, but none of those four points in fact shows
that GridKor did – or could – allege that Plaintiff's statements were false when made. *See* Dkt.
42, *Opp. Br. at p. 10.*

*First*, GridKor characterizes Plaintiff's argument as "bold" in light of its alleged failure to
deliver certain records. But GridKor either has facts within its knowledge to allege a fraud claim
or it does not. It cannot assert that a statement is fraudulent if GridKor also asserts that it simply
does not have the facts to know whether the statement at issue was true or false when made.

*Second*, GridKor puzzlingly asserts that the requirement of alleging falsity is not a
pleading a requirement but rather a *factual issue* not properly addressed at this time. GridKor
may intend to address Plaintiff's observation that the minor disparity in the financial and
inventory numbers between August and November numbers is wholly consistent with an
operating business that has manufactured and sold product over four months.  *See* Dkt. 32, *Mov.
Br. at 13.* That observation merely suggests that no inference can be drawn from the difference in
numbers other than that the business has been operating. This is not a factual issue to be
determined.

*Third,* GridKor relies on paragraph 28 of the Amended Counterclaims for the proposition
that two invoices from PVE's warehouse were absent from Plaintiff's statement of accounts

payable. However, paragraph 28 only refers to invoices missing from a post-closing report, not a pre-closing report.  A post-closing report, even if inaccurate, cannot support a claim of fraud.

*Fourth*, GridKor argues that it has alleged falsity because in August 2022, Plaintiff claimed inventory was available and it should be inferred from paragraphs 24-25 of the Amended Counterclaims that Plaintiff's statement was false when made.   However, paragraphs 24-25 allege that GridKor learned post-closing (after November 10, 2022) that inventory was frozen due to unpaid bills. There is no allegation that the accounts were frozen prior to closing.

### B.       GridKor Fails to Allege Reasonable Reliance

GirdKor's Opposition does not attempt to argue that the Amended Counterclaims adequately allege reasonable reliance.  Instead, GridKor rests on the Amended Counterclaims' conclusory pleading, unsupported by any factual allegations, stating only that GridKor "reasonably relied," and "justifiably relied" on the purported misrepresentations, without stating how or why that reliance was reasonable or justified.  Dkt. 26, *Am. Counterclaims* ¶¶ 51, 58. Nor does GridKor bother suggesting that it conducted a prudent (or any) investigation. Rather, GridKor's only response is to (wrongly) protest that it *need not* conduct a prudent investigation. This is incorrect.  *See Xia Bi v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019) ("The touchstone of reasonableness under Virginia law is 'prudent investigation.'") (*citing Hitachi Credit*, 166 F.3d at 629).

### C.       The Fraud-Based Claims Still Fail to Meet the
###           Heightened Pleading Requirements of Fed. R. Civ. P. 9(b)

In its Opposition, GridKor does not dispute that Fed.R.Civ.P. 9(b) applies to both Claims III and IV. GridKor simply concludes that by alleging that the three statements were made by Urben (sometimes with a date certain, but not in all cases), it has met its burden. GridKor does not attempt to explain – because it cannot – where the Amended Counterclaims allege facts with

particularity that show that the subject statements were false when made. GridKor does not attempt to explain – because it cannot – where the Amended Counterclaims alleges facts with particularity that show how or why GridKor purportedly relied on these statements.

GridKor has also failed to allege materiality and damages – each a necessary element of a fraud-based claim under Virginia law – with the requisite specificity. *Baker v. Elam*, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012) (each element of a fraud claim must be pled with particularity).

## III.   THE CLAIMS ADDRESSED SHOULD BE DISMISSED PREJUDICE

For the reasons set forth in Plaintiff's Moving Brief, the dismissal should be with prejudice. *See* Dkt. 32, *Mov. Br. at 17.*  GridKor does not challenge this argument and it is therefore properly deemed conceded. *Ruddy v. Bluestream Prof.l Serv., LLC,* 444 F.Supp. 3d 697, n.34 (E.D.Va. 2020).

## <u>CONCLUSION</u>

For all of the reasons set forth above, Urben respectfully requests that the Court dismiss (i) those branches of Counts I and II which rest on any alleged failure to deliver or provide access to Company assets; and (ii) Counts III and IV in their entirety, and that each such dismissal be with prejudice; and grant such other and further relief as this Court deems just and proper.

Dated:  May 16, 2023

RESTON LAW GROUP, LLP

By: */s/ John A. Bonello*
John A. Bonello (VSB No. 71926)
2100 Reston Parkway
Suite 450
Reston, Virginia 20191
Phone: 703-483-2810

Fax: 703-264-2226
Email: jbonello@restonlaw.com

-and-

KIRSCH & NIEHAUS, PLLC
(admitted pro hac vice)
Emily B. Kirsch
Craig S. Tarasoff
950 Third Avenue, Suite 1900
New York, New York 10022
(646) 415-7530
emily.kirsch@kirschniehaus.com
craig.tarasoff@kirschniehaus.com

*Attorneys for Plaintiff/Counterclaim
Defendant Avonda Urben, on behalf of
herself and in her capacity as the Sellers'
Representative*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 16, 2023, I filed the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

<u>/s/ John A. Bonello</u>
John A. Bonello
