IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

AVONDA URBEN,
    Plaintiff,

v.                                                   Civil No. 1:23cv138 (DJN)

GRIDKOR, LLC, *et al.*,
    Defendants.

## MEMORANDUM OPINION

This commercial dispute arising from the failed acquisition of a skincare business comes before the Court on Plaintiff Avonda Urben's Motion for Leave to File a Second Amended Complaint. (ECF No. 158 (the "Motion to Amend").) Plaintiff filed her Motion on February 2, 2024. Defendants GridKor, LLC, Michael Bryant, KorDev, LLC, and Alyssa Schrecengost Bryant responded to the Motion to Amend on February 16.[1] (ECF No. 163.) On February 22, 2024, Plaintiff filed a reply in support of her Motion. (ECF No. 164.) The Court heard oral argument on the matter on February 28, 2024, and the Motion to Amend thus stands ripe for disposition.

Resolution of Plaintiff's Motion to Amend requires detailed analysis. To make matters short, that analysis results in the following conclusions:

    (1) Plaintiff's Motion to Amend requires a showing of good cause under Rule 16;

    (2) Plaintiff demonstrates the requisite good cause, though only barely;

    (3) Prejudice to Defendants precludes joining any new parties or reopening discovery;

---

[1] For clarity, the Court uses "GridKor" to refer to GridKor, LLC; "KorDev" to refer to KorDev, LLC; "the Bryants" to refer to Michael and Alyssa Bryant jointly; and "Defendants" to refer to all four collectively.

(4) Plaintiff has not displayed bad faith; and

(5) Plaintiff may not add conspiracy claims to her complaint because doing so would be futile.

Accordingly, Plaintiff may amend her factual contentions, add a claim for negligent misrepresentation, and drop Alyssa Bryant as a defendant. The Federal Rules allow her no more. Thus, for the reasons that follow, the Court will GRANT IN PART and DENY IN PART Plaintiff's Motion to Amend.

## I. BACKGROUND

The tangled procedural history of this case merits some review. Plaintiff filed suit against GridKor and the Bryants on January 31, 2023, and she amended her complaint as of right on March 29, 2023.[2] (ECF Nos. 1, 15.) Plaintiff alleged then, as she does now, that she agreed to sell her skincare business, The Perfect V Enterprises ("PVE"), to GridKor. *Urben v. GridKor, LLC* (*Urben I*), 2023 WL 3922622, at *1 (E.D. Va. May 8, 2023) (ECF No. 42). On November 8, 2022, Plaintiff and GridKor executed a Stock Purchase Agreement ("SPA") based on what Plaintiff alleges were material misrepresentations by Defendants. *Id.* (ECF No. 15-1 at 5.) In Plaintiff's telling, Defendants violated the SPA almost immediately thereafter by shuttering PVE instead of using their best efforts to expand and develop the business. *Urben I*, 2023 WL 3922622, at *1.

On March 14, 2023, GridKor filed an Answer, Counterclaim, and Third-Party Complaint in response to Plaintiff's allegations. (ECF No. 10.) GridKor amended its counterclaims as of right on April 12, 2023. (ECF No. 26 (the "Amended Counterclaims").) That mirror-image pleading blames Plaintiff for the collapse of the PVE deal. GridKor alleges that Plaintiff herself

---

2   That amendment added KorDev as a party defendant.

2

breached the SPA by failing to transfer PVE's assets so that GridKor could take over the business, and that Plaintiff made material misrepresentations to GridKor by misstating PVE's assets and liabilities.

KorDev and the Bryants moved to dismiss the Amended Complaint at the same time that GridKor filed its amended responsive pleading. (ECF No. 22.) Soon after, Plaintiff moved to dismiss GridKor's Amended Counterclaims (ECF No. 32). On May 8, 2023, Senior District Judge T.S. Ellis, III, denied KorDev and the Bryants' motion in part and granted it in part. *Urben I*, 2023 WL 3922622, at *2. Specifically, Judge Ellis dismissed Plaintiff's fraudulent inducement claim with respect to Alyssa Bryant and denied the motion in all other respects. *Id.* at *1. On July 14, 2023, Judge Ellis denied Plaintiff's motion to dismiss. *Urben v. GridKor, LLC* (*Urben II*), 2023 WL 5987383, at *1 (E.D. Va. July 14, 2023) (ECF No. 49).

After resolving Plaintiff's motion to dismiss, Judge Ellis entered a Rule 16 scheduling order. (ECF No. 50.) Soon after, to supplement Judge Ellis's high-level scheduling order, Magistrate Judge Ivan D. Davis entered a more detailed Scheduling Order that provides all relevant deadlines for this case. (ECF No. 53.) The Scheduling Order specifies that "[a]ny motion to amend the pleadings . . . shall be made as soon as possible after counsel or the party becomes aware of the grounds for the motion." (*Id.* ¶ 7.) The parties then engaged in discovery for three months without presenting any disputes for judicial resolution. On October 8, 2023, Plaintiff's counsel moved to withdraw.[3] On October 17, Judge Davis granted the motion to withdraw without holding a hearing. (ECF No. 58.) Plaintiff promptly retained new counsel,

---

[3] Plaintiff's counsel represented that Virginia Rule of Professional Conduct 1.16 permitted their withdrawal but that the specific reasons for their motion were protected by the attorney-client privilege. (ECF No. 55 at 1–2.)

3

who appeared in this matter on October 25. (ECF Nos. 65–67.) Discovery proceeded for another month without any disputes before Judge Ellis or Judge Davis.

On November 28, 2023, ten days before the scheduled end of discovery (ECF No. 50 at 1), Plaintiff moved to disqualify Defendant's counsel and stay all discovery until her motion was heard by the Court. (ECF No. 71.) Plaintiff's memorandum in support of that motion accused Plaintiff's prior counsel of "deficient and negligent assistance," referred to evidence against Defendants that was allegedly "criminal in nature," and, most importantly, referred to a "forthcoming motion for leave to amend her complaint" and obliquely referred to "a significant amount of evidence" that "pertains to additional parties who are necessary to join in this litigation as named defendants." (ECF No. 72 at 2–3.) On November 29, nine days before the court-ordered deadline, Plaintiff requested an additional 90 days for discovery. (ECF No. 73.) Judge Davis did not give Plaintiff the extension that she requested.[4] Instead, Judge Davis extended the discovery period until December 29, 2023, "for the sole purpose of noticing and conducting depositions" of (1) Plaintiff, (2) certain "individuals named by Plaintiff's counsel" before Judge Davis, and (3) Defendants. (ECF No. 100.)

After that, the motion practice only intensified, and on December 29, 2023 — the day of Judge Davis's extended deadline — Plaintiff moved for leave to complete four depositions "out of time." (ECF No. 132.) On January 5, 2024, Judge Davis granted Plaintiff's motion only in part and permitted one more deposition — Matt Tobin's — to take place. (ECF No. 145.) At

---

[4] In addition, Judge Davis denied Plaintiff's disqualification motion. (ECF No. 120.) Plaintiff also attempted to revoke defense counsel's *pro hac vice* admission, but that motion was denied as moot when the targeted attorney voluntarily withdrew from the case. (ECF Nos. 92, 123, 145.) Plaintiff, however, refused to take "yes" for an answer, and — eager to prove defense counsel's allegedly unprofessional conduct — unsuccessfully *opposed* defense counsel's motion to withdraw. (ECF No. 137.)

4

that time, a month after the deadline set by Judge Ellis, discovery came to a close. The parties filed and briefed cross motions for summary judgment as Judge Ellis directed. To this day, no party has moved to extend the deadline to file dispositive motions. Briefing on those motions concluded on January 8, 2024, with the filing of Plaintiff's reply in support of her motion for summary judgment. (ECF No. 146.)

On January 18, 2024, this case was transferred to the undersigned. (ECF No. 148.) Only thereafter did Plaintiff file her long-awaited motion for leave to amend. (ECF No. 151.) Plaintiff's motion was procedurally improper, so the Court denied it without prejudice and informed Plaintiff that any renewed motion would be required to explain "why good cause exists for the amendment Plaintiff seeks" under Federal Rule of Civil Procedure 16. (ECF No. 152.) Instead of following the Court's directions, Plaintiff re-filed the same memorandum as before. (ECF No. 154.) The Court denied that renewed motion, too, and set a schedule for disposition of what would be Plaintiff's "second and final opportunity to amend her Motion." (ECF No. 156.) Finally, on February 2, 2024, Plaintiff made a third attempt at filing her Motion to Amend. (ECF No. 159.) This time, Plaintiff properly presented her motion, and the Court now reviews it.

## II.  STANDARD

Federal Rules of Civil Procedure 15 and 16, taken together, set out "three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021).[5] In the beginning, a plaintiff may amend her complaint as of right on the terms specified by Rule 15(a)(1). Once Rule 15(a)(1) no longer applies, a plaintiff may not amend without either the written consent of the opposing party or the court's leave. Fed. R. Civ.

---

[5] The Second Circuit's three-tier framework, as described in *Sacerdote*, precisely synthesizes the consensus holding of the nation's Courts of Appeals, including that of the Fourth Circuit.

5

P. 15(a)(2).⁶ A court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and leave to amend "should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile.'" *Moore v. Equitrans, L.P.*, 27 F.4th 211, 218 (4th Cir. 2022) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*)). However, if a plaintiff wishes to amend "after the deadlines provided by a scheduling order have passed," Rule 16(b)(4)'s "good cause standard" for modifying a scheduling order "must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). This standard is more demanding than the "liberal allowances" of Rule 15. *Id.* at 299; *see Sacerdote*, 9 F.4th 95 at 115 (once Rule 16 applies, "[t]he period of 'liberal' amendment ends"). Diagnosing good cause requires a contextual analysis, but a party who "has not acted diligently in compliance with the schedule" cannot show good cause under Rule 16(b)(4). *McMillan v. Cumberland Cty. Bd. of Educ.*, 734 F. App'x 836, 846 (4th Cir. 2018); *see* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1522.2 (3d ed. 2010) (same).

### III. ANALYSIS

Defendants contend that both Rule 15 and Rule 16 require the Court to reject Plaintiff's Motion to Amend. Because Rule 16 imposes the tougher standard of the two rules, the Court begins there.

---

⁶ An amendment which, if accepted, would join or dismiss parties must also satisfy Rule 21, which governs a motion to "add or drop a party" and always requires leave of court. *Age of Majority Educ. Corp. v. Preller*, 512 F.2d 1241, 1245–46 (4th Cir. 1975) (*en banc*).

A.   **Rule 16**

1.   **Does Rule 16(b)(4) Apply?**

Judge Davis ordered Plaintiff to seek amendment "as soon as possible" after her counsel became "aware of the grounds for the motion." (Scheduling Order ¶ 7.) Plaintiff's pleadings reveal that Plaintiff's counsel was aware of the need and the grounds for amendment no later than November 28, 2023. (ECF No. 72 at 3.) Plaintiff, however, did not first move for leave to amend until January 23, 2024 — 56 days later. (ECF No. 151.) Indeed, Defendants contend that Plaintiff's counsel sought Defendants' position on a motion for leave to amend on November 2, 2023 — a delay of 82 days. (ECF No. 163 ("Defs' Mem.") at 6 & Ex. A.) Plaintiff's 56-day delay does not indicate that she moved to amend "as soon as possible" after learning of the grounds for the motion.

Plaintiff says nothing in her reply brief that would demonstrate her compliance with the Scheduling Order. She notes that she "filed her motion to amend the complaint within weeks of discovering the evidence" required. (ECF No. 164 ("Pltf's Reply") at 4.) She also declares that Defendants "want to blame [her] for not filing an amended complaint in less than a month from obtaining information from the Defendants." (*Id.* at 3.) But Plaintiff never states when she or her counsel became "aware of the grounds for the motion" (Scheduling Order ¶ 7) and fails to rebut Defendants' contention that Plaintiff waited 82 days to move. Plaintiff did not represent in November that she needed further discovery to amend her complaint. And when Plaintiff disclosed to the Court that she intended to request leave to amend, she represented that her motion would be "based on [] newly *discovered* information," thereby suggesting that she already had all the facts she needed. (ECF No. 72 at 10 (emphasis added).) Because Plaintiff does not explain in more than conclusory fashion why her Motion to Amend was filed "as soon

7

as possible," the Court must conclude that the Motion to Amend violates paragraph 7 of the Scheduling Order.

### 2. Is Rule 16(b)(4) Satisfied?

Because Plaintiff filed her Motion to Amend in violation of the Scheduling Order, Plaintiff cannot succeed without providing good cause to modify or excuse the Scheduling Order's commands. Fed. R. Civ. P. 16(b)(4). Plaintiff makes this showing — by a hair. Plaintiff did not use her remaining discovery time wisely. Nevertheless, the Court cannot conclude that Plaintiff "has not acted diligently." *McMillan*, 734 F. App'x at 846 (quotation omitted). Plaintiff's attempts to disqualify and then punish defense counsel occupy an outsized proportion of the docket. These efforts were, at best, orthogonal to the merits — a fact that did not escape the notice of the assigned Magistrate Judge.[7] Plaintiff chose to pursue these collateral matters to the exclusion of her amendment motion. That strategic decision violated the Scheduling Order's command that amendment be prioritized. But Plaintiff's efforts have been diligent, though misdirected. Her proposed Second Amended Complaint shows significant effort; the Court cannot say that Plaintiff could have submitted as detailed an amended pleading in November. Although the benefit of hindsight casts serious doubt on merits of Plaintiff's strategy, it also

---

[7] Judge Davis's most helpful summarization of the parties' December motion practice is reproduced below:

> THE COURT: Before we begin, it's been quite some time since this court has participated in this many motions in a case that appeared to be based, in large part, on the alleged conduct or misconduct by a counsel and clients rather than on the claims and defenses in this case, which is disconcerting.

(ECF No. 162 (Tr. of Jan. 5, 2024 Hr'g) at 3:16–20.)

shows that Plaintiff's efforts have been diligent.[8] The record therefore supports a finding of good cause to excuse Plaintiff's noncompliance with the Scheduling Order.

### B.  Rule 15

Because Plaintiff has surmounted Rule 16(b)(4), she must next show that she is entitled to amendment under Rule 15's more liberal standard. Plaintiff's motion must be granted absent "prejudice, bad faith, or futility." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (quotation omitted). Defendants argue all three exceptions are present here.

#### 1.  Prejudice

"Prejudice to the opposing party" justifies denying leave to amend. *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018). Of course, every meritorious amendment prejudices the opposing party to some extent, if only by strengthening the movant's case. For this reason, the prejudice inquiry in actuality turns on whether the opposing party would suffer "*undue* prejudice." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 119 (4th Cir. 2013) (emphasis added).

Whether prejudice can be deemed undue depends on the "particular circumstances presented," but usually "the nature of the amendment and its timing" disposes of the question. *Abdul-Mumit*, 896 F.3d at 293 (internal quotation omitted). Turning to the nature first, an amendment can be unduly prejudicial if it alleges a new legal theory that "would entail additional discovery and evidentiary burdens on the part of the opposing party." *Scott*, 733 F.3d at 118. "An amendment, is not prejudicial, by contrast, if it merely adds an additional theory of

---

[8]  As Plaintiff would have it, the past several months have sent her scrambling to compensate for the insufficient efforts of her prior counsel. The Court does not sit in judgment of Plaintiff's original lawyers, but the Court equally does not doubt that Plaintiff's current counsel have labored continuously since they appeared on the docket.

9

recovery to the facts already pled." *Laber*, 438 F.3d at 427. As for timing, the further a case progresses before a movant requests leave to amend, "the more likely it is that the amendment will prejudice the defendant," even though delay, without more, does not justify denying leave to amend. *Id.* The Fourth Circuit, considering nature and timing together, has therefore "repeatedly affirmed denials of motions to amend which change the character of the litigation late in the proceedings." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 n.3 (4th Cir. 2010); *see Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987) ("Belated claims which change the character of litigation are not favored.").

When the Court applies the foregoing principles to the facts of this case, it becomes clear that amendment, considered abstractly, would not unduly prejudice Defendants. Plaintiff's Motion to Amend comes late in the game: Discovery has already ended and motions for summary judgment have already been briefed. Plaintiff has been aware of the grounds for her motion since, at latest, November 28, 2023 — nearly as long as the three-month delay that the Fourth Circuit found was undue in *Deasy v. Hill*. 833 F.2d at 41. Nonetheless, for reasons that are outside of the parties' control and were unforeseeable when the Scheduling Order was issued, this case does not stand on the eve of trial. As the Court noted on the record on February 28, the final pretrial conference in this case would have been continued from its original date of March 21, 2024, even if discovery had ended on December 8 and Plaintiff had moved to amend promptly. With or without amendment, the final pretrial conference in this case would remain set for July 18, 2024, with trial set to begin with jury selection on July 22, 2024. Defendants would therefore be less prejudiced by amendment than the opposing parties in many of the cases

where the Fourth Circuit found undue prejudice.[9] On balance, the Court concludes that prejudice to Defendants does not categorically preclude an amendment.

Because the Court does not find amendment categorically improper, it must examine Plaintiff's proposed Second Amended Complaint with more specificity. Defendants do not argue that they would be prejudiced by Plaintiff's proposed revision of her factual allegations. They instead focus on Plaintiff's new claims and new parties. The Court does the same.

### a. *Plaintiff's New Claims*

Plaintiff proposes to add three new causes of action to this case: Common-law negligent misrepresentation, statutory business conspiracy, and common-law conspiracy. (ECF No. 155 (Plaintiff's Proposed Second Amended Complaint (the "SAC")) at ¶¶ 312–36.)[10] Plaintiff wishes to plead negligent misrepresentation "in the alternative to Count III," her claim for fraud in the inducement. (*Id.* at 56.) As Judge Ellis held in July, under controlling Delaware law, negligent misrepresentation requires a plaintiff to "satisfy all the elements of common-law fraud with the exception that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly." *Urben II*, 2023 WL 5987383, at *4 (quoting *Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. 1996)). The overlap between the elements of the two torts suggests that Plaintiff should need no new discovery on negligent misrepresentation and that adding that

---

[9] *See, e.g.*, *Moore*, 27 F.4th at 219 (permitting amendment would "reopen the liability stage of trial *years* after a jury verdict was rendered") (emphasis in original); *Abdul-Mumit*, 896 F.3d at 294 (post-judgment amendment sought after "opportunities to amend, dispositive motions, [and] dismissal with prejudice"); *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997) (motion filed "a week before trial"); *Deasy*, 833 F.3d at 40 (amendment sought "immediately before the trial").

[10] The SAC also pleads a claim of defamation. (SAC ¶¶ 337–41.) However, Plaintiff represents to the Court that she has abandoned her defamation claim and "will formally withdraw [it] in a separate filing." (ECF No. 159 ("Pltf's Mem.") at 2 n.1.) Accordingly, the Court does not address that claim here.

11

count would not "change the character of the litigation." *Deasy*, 833 F.3d at 42. Accordingly, Plaintiff would cause little prejudice by pleading that claim in the alternative.

A similar result obtains for Plaintiff's conspiracy claims.[11] Common-law conspiracy requires proof of an agreement between persons to use wrongful means toward some common end. *See Empire Fin. Servs., Inc. v. Bank of N.Y. (Del.)*, 900 A.2d 92, 97 (Del. 2006) (common-law conspiracy requires "evidence of a combination between two or more persons, followed by an unlawful act carried out in furtherance of such combination, and damages.").[12] Virginia's business conspiracy statute mandates a similar showing.[13] The objective of the civil conspiracy need not be wrongful, but the act done in furtherance of the conspiracy must at least be tortious. *Id.*; *see, e.g., CMS Investment Holdings, LLC v. Castle*, 2015 WL 3894021, at *21 (Del. Ch. June 23, 2015) ("breach of contract[ and] breach of the implied covenant of good faith and fair dealing" are sufficient unlawful acts to state a civil conspiracy claim). If Plaintiff proves any of her first four claims — breach of contract, breach of the implied covenant, fraudulent inducement, and negligent misrepresentation — she needs only an agreement between the defendants to prove a conspiracy. For that reason, Plaintiff appropriately represents that, were

---

[11] Plaintiff's conspiracy claims must, however, be denied as futile. *See infra* Section III.C.

[12] Although Plaintiff pleads that Virginia law applies to both her conspiracy claims (SAC ¶ 27), the Court has no obligation to assume the truth of such legal conclusions. *U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022). For reasons explained below, Delaware, not Virginia, law governs Plaintiff's conspiracy claims. *See infra* Section III.C.

[13] Plaintiff's statutory conspiracy claim features essentially identical elements. To succeed there, Plaintiff would need to prove by "clear and convincing evidence," *N. Va. Real Estate, Inc. v. Martins*, 720 S.E.2d 121, 133 (Va. 2012), that "two or more persons . . . combine[d] . . . for the purpose of [] willfully and maliciously injuring another in his reputation, trade, business or profession" and that she suffered an injury to her "reputation, trade, business or profession" as a result. Va. Code §§ 18.2-499(A), -500(A). The two causes of action differ only in that the statute requires specific intent to harm. *Glob. Tel*Link Corp. v. JACS Sols. Inc.*, ___ F. Supp. 3d ___, 2023 WL 8918281, at *11 & n.17 (E.D. Va. Dec. 27, 2023) (Ellis, J.) (citing *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007)).

her amendment allowed, she would not need any new discovery unrelated to the new defendants that Plaintiff wishes to add. (ECF No. 159 ("Pltf's Mem.") at 6.) Conspiracy claims would therefore also not fundamentally change this lawsuit's character.

Seeking to avoid this conclusion, Defendants object on the basis that they would be prejudiced by the increased liability generated by the Virginia conspiracy statute's treble damages provision, Va. Code § 18.2-500(A). (Defs' Mem. at 10.) But Defendants cite no authority showing that increased liability constitutes undue prejudice under Rule 15. Indeed, the trend in the caselaw is exactly the opposite: Generally, "an increase in defendants' exposure is not grounds for denying leave to amend." *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 678 (S.D.N.Y. 1996); *see Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) ("a change in the theory of recovery" not cognizable as prejudice); 6 Wright, Miller & Kane at § 1487 & n.15 ("that amendment may increase defendant's potential liability" typically does not bar amendment). On balance, Plaintiff's new conspiracy claims would not be unduly prejudicial.

### b. *Plaintiff's New Parties*

Plaintiff's request to add three new defendants — Paul Tobin, Matt Tobin, and MPT Microgrid Services LLC — proves, by contrast, to be unduly prejudicial and must be denied.[14] To begin with, these new defendants would bear the entire burden of Plaintiff's requested supplemental discovery: in her own words, if these persons were added, Plaintiff would seek "limited written discovery for each new [d]efendant" as well as a Rule 30(b)(1) deposition of

---

[14] The SAC would also drop Alyssa Schrecengost Bryant as a defendant. Neither party addresses that aspect of the SAC, but it could not possibly be prejudicial or futile. Accordingly, the Court will permit Alyssa Bryant to be removed as a defendant without further analysis.

13

Paul Tobin and a Rule 30(b)(6) deposition of MPT Microgrid.[15] (Pltf's Mem. at 6.) The new defendants would be thrown into this case without a fair opportunity to seek discovery. They alone would shoulder the weight of Plaintiff's requested discovery extension — the third such in this case. (*See* ECF Nos. 100, 145 (granting previous extensions).) If a party suffers prejudice from "conduct[ing] discovery a second time," a new party would be doubly prejudiced if compelled to engage in discovery long after discovery was meant to close. *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997) (internal quotation omitted).

Plaintiff's arguments do not rebut this conclusion. Plaintiff asserts that the new parties that she seeks to add are "necessary." (Pltf's Mem. at 8.) If Plaintiff means to assert that the new parties are required to be joined under Rule 19, she does not explain why or how. *See* Fed. R. Civ. P. 19(a)(1) (setting out circumstances in which a person "must be joined"). Plaintiff instead rests her argument on Rule 20(a)(2), which concerns permissive joinder of parties. (Pltf's Mem. at 7–8.) But the fact that MPT Microgrid and the Tobins *may* be joined does not determine whether they would be prejudiced by joinder. Because adding new defendants would require reopening discovery and place the new defendants at a disadvantage relative to every other person in the case, the new defendants would be unduly prejudiced if amended in. In this respect, Plaintiff falls short of the bar set by Rule 15.[16]

---

[15] The third new defendant, Matt Tobin, has already been deposed. (ECF No. 145 at 1 (allowing Plaintiff "to take a 3-hour deposition of Matthew Tobin.").)

[16] Plaintiff also complains that she could not have added the new defendants earlier, as MPT Microgrid and the Tobins are absent from GridKor, LLC's original Rule 7.1 disclosure, which erroneously names "MPT Holdings LLC" as a GridKor member. (Pltf's Reply at 2; ECF No. 11 at 2.) Plaintiff's attempt to shift the blame to Defendants carries no weight in the Court's prejudice analysis. The Court takes a similar view of Plaintiff's repeated invocations of defense counsel's unprofessional conduct in December 2023. As Defendants persuasively argue, Plaintiff was informed that MPT Microgrid was a member of GridKor, LLC on September 13, 2023. (Def's Mem. at 4–5.) Further, Plaintiff has alleged wrongdoing on the part of the Tobins from the beginning. (*Id.* at 5.) Had Plaintiff moved to add the new defendants in September, the

## 2. Bad Faith

Bad faith, like undue prejudice, warrants denial of leave to amend. That "many-faceted" concept cannot be comprehensively defined, because it implicates highly contextual judgments. *U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022). However, the Fourth Circuit has recently provided helpful guidance that informs this inquiry. As the Fourth Circuit stated in *Nicholson*, acting with bad faith means acting "with a dishonesty of purpose" — that is, "to act for the wrong reasons." *Id.* Bad faith "may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules." *Id.* As with prejudice, delay alone does not bespeak bad faith, but "it is often evidence that goes to prove bad faith." *Id.* at 197.

Defendants argue that Plaintiff's actions betray what "appears to be a dilatory motive." (Def's Mem. at 11.) Defendants correctly assert that a party that delays a motion to amend "for the purpose of delaying or avoiding judgment in the case" acts in bad faith. (*Id.*) Such subterfuge surely qualifies as an amendment sought "for the wrong reasons." *Nicholson*, 42 F.4th at 198. Defendants have some persuasive record evidence for this conclusion. Most probatively, as Defendants point out, Plaintiff has already tried and failed to depose Paul Tobin — a deposition that Judge Davis expressly denied Plaintiff permission to take. (Def's Mem. at 11.)[17] However, on the record here, the Court cannot conclude that Plaintiff's motives are dishonest. Plaintiff has not asked to delay, suspend, or re-brief summary judgment. Instead,

---

prejudice to them would be much reduced. Plaintiff's choice to wait until after the close of discovery — not Defendants' deficient Rule 7.1 disclosure — gives rise to the prejudice that forecloses her attempt to add new defendants.

[17] When Plaintiff's motion to depose Paul Tobin was heard, Plaintiff was unable to identify any relevant, non-cumulative information that Paul Tobin could divulge. (ECF No. 162 at 17–24.)

15

Plaintiff's delay most likely stems from her distraction from the merits of this case over the course of December 2023. And the record indicates that Plaintiff wishes to depose Paul Tobin, because she would like to add him as a party, not *vice versa*. (ECF No. 162 at 19–20.) Accordingly, the Court concludes that Plaintiff does not seek amendment in bad faith and that bad faith provides no basis to deny her Motion to Amend.

### 3. Futility

A motion to amend may be denied for futility "if the complaint fails to withstand Rule 12(b)(6) scrutiny." *Triangle*, 988 F.3d at 750. Defendants argue that each of Plaintiff's new claims must fail; as to two of them, Defendants' arguments justify dismissal, but as to the third, prudential considerations persuade the Court to decline to find futility.[18]

Plaintiff's statutory business conspiracy claim lacks merit, because Virginia law does not apply. Judge Ellis has already held that "the parties' agreement clearly demonstrates a broad intent by the parties to apply Delaware law to contract-related tort claims." *Urben II*, 2023 WL 5987383, at *4. Judge Ellis's holding constitutes the law of the case, and it will be followed. *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). The SAC alleges that Defendants conspired with one another to fraudulently induce Plaintiff's assent to the SPA. (SAC ¶ 323.) If, as Judge Ellis held, fraudulent inducement counts as a "contract-related tort claim," so too does a conspiracy to fraudulently induce. Application of Delaware law precludes Plaintiff's attempt to invoke a Virginia statute.

---

[18] At the outset, the Court must note that Plaintiff did not say a word in her reply brief in response to Defendants' futility arguments. Because Plaintiff says nothing to "defend the claim that [Plaintiff herself] pled" and "fails to counter" her opponent's arguments, the Court has discretion to treat that argument as conceded. *Glob. Tel*Link*, 2023 WL 8918281, at *11; *see also Urben I*, 2023 WL 3922622, at *1 (so doing). Nevertheless, in a spirit of grace, the Court exercises its discretion to reach the merits of Defendants' futility arguments. Plaintiff should keep in mind that the Court may exercise its discretion less favorably in the future.

Plaintiff's common-law conspiracy claim must also be rejected as futile. For the reasons stated above, Delaware law governs this claim. Defendants have two arguments to defeat this cause of action. First, Defendants argue that "[c]ivil conspiracy is not an independent cause of action under Delaware law." (Def's Mem. at 13.) Defendants are correct, but that fact does not entirely defeat Plaintiff's claim. As already stated, Delaware common law conspiracy requires that the overt act taken in furtherance of that conspiracy be independently unlawful. *Empire Fin. Servs.*, 900 A.2d at 97. For that reason, many of Plaintiff's allegations do not support the tort that she pleads. (SAC ¶¶ 332–36.) However, Plaintiff also pleads that Defendants conspired to fraudulently induce her to execute the SAC (*id.* at ¶ 331), and fraudulent inducement, being unlawful, can support a Delaware conspiracy claim.

Defendants then argue that the remaining allegations must be disregarded because "[a] company cannot be deemed to have conspired with its own members, officers, and agents." (Def's Mem. at 14.) Here, Defendant's arguments also have merit. Generally, "agents of a corporation cannot conspire with one another" in their capacity as agents. *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020). The same holds true for corporate officers and for members of a limited liability company. *Skye Mineral Invs., LLC v. DXS Cap. (U.S.) Ltd.*, 2021 WL 3184591, at *20 (Del. Ch. July 28, 2021) (applying this doctrine to an LLC). Plaintiff alleges that "GridKor, through its Members, Bryant on behalf of KorDev and the Tobins on behalf of MPT, and Matt Tobin as the Manager of GridKor, knowingly conspired with each other." (SAC ¶ 331.) Plaintiff could not have more clearly alleged that her "conspiracy" involved a collaboration between members and officers of an LLC acting in their capacity as such. Thus, the Court concludes that futility dooms Plaintiff's conspiracy claim in full.

Finally, Defendants argue that Plaintiff's "negligent misrepresentation claim fails for the same reasons as her previously-pled fraudulent inducement claim." (Defs' Mem. at 12.) But Plaintiff's fraudulent inducement claim has not yet failed. To be fair, Defendants did move for summary judgment on that count of Plaintiff's complaint, but the Court has had no opportunity at this juncture to rule on that motion. If the two theories rise and fall together, they ought to be ruled on together, too. The Court therefore declines to pass judgment on Plaintiff's negligent misrepresentation claim until it can be considered in concert with Plaintiff's fraudulent inducement claim.

## IV.   CONCLUSION

Plaintiff must meet Rule 16's good cause standard, and she does. She has not displayed bad faith, but in some respects, her desired amendment must be rejected as futile, and in other respects, it must be rejected as prejudicial. Plaintiff may not add any new defendants, as they would be unduly prejudiced; neither may she plead futile claims for conspiracy or a withdrawn claim for defamation. However, the Federal Rules permit Plaintiff to (1) amend her factual allegations; (2) plead a claim of negligent misrepresentation; and (3) drop Alyssa Schrecengost Bryant as a party. Accordingly, the Court will GRANT IN PART and DENY IN PART Plaintiff's Motion to Amend (ECF No. 158).

An appropriate order shall issue.

Let the Clerk file a copy of this Memorandum Opinion and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Alexandria, Virginia
Date: February 28, 2024